IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| NAJIB GERDAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:10cv908 (JCC) |
| JANE DOE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court must grant the motion and dismiss the claim in its entirety.

### I.     Background

This matter arises from a shooting in front of the Franconia District Police Station in Franconia, Virginia. According to the Complaint, Plaintiff, a Virginia resident, while driving on the early morning of February 2, 2008, noticed that he was being followed home by an unidentified vehicle. (Am. Compl. ¶¶ 4, 10.) Rather than leading the vehicle to his home, Plaintiff drove to the nearest police station, Franconia District Police Station, at 6121 Franconia Road, Franconia, VA

1

22310. (Am. Compl. ¶ 10.) Plaintiff exited his car to speak with the individual following him. *Id.*

While in the parking lot, Plaintiff saw a black taxi speed into the lot, followed immediately by a blue SUV. (Am. Compl. ¶ 11). The SUV was chasing the taxi and hit it multiple times. *Id.* Plaintiff heard the taxi honk its horn and saw the taxi driver roll down his window and shout to Plaintiff for help. (Am. Compl. ¶ 12.) Plaintiff went inside the police station to seek help. *Id.*

Inside the station, Plaintiff approached Defendant Doe at the front desk. (Am. Compl. ¶ 14.) Plaintiff noticed her eyes were closed, her feet were propped up on the desk, and she appeared to be sleeping. *Id.* Plaintiff woke Doe and informed her of the situation taking place outside, "particularly noting that the SUV driver appeared to be very dangerous." (Am. Compl. ¶ 15.) Doe, appearing indifferent, offered no further assistance than to "instruct[] Plaintiff to go back outside and tell the taxi driver [to] call his dispatch to report the incident." (Am. Compl. ¶ 16.)

As Plaintiff then exited the building, the taxi driver parked his car and ran into the police station. (Am. Compl. ¶ 17.) Apparently mistaking Plaintiff for the taxi driver, the driver of the SUV began shooting at Plaintiff, hitting him five times. (Am. Compl. ¶ 18.)

Although the station's surveillance cameras captured the incident, no officers inside the police station came outside to render aid to Plaintiff. *Id.* Plaintiff instead called for his own ambulance, using his cellular phone, while on the ground injured and bleeding. (Am. Compl. ¶ 19.) Shortly after the shooting, a police officer who was off the premises during the incident pulled into the parking lot and rendered assistance. (Am. Compl. ¶ 20.) Plaintiff suffered extensive injuries as a result of the attack. (Am. Compl. ¶¶ 21-25.)

Plaintiff filed a complaint against the Defendants in the Fairfax County Circuit Court on April 27, 2010. (Opp. at 2.) Plaintiff alleged gross negligence (Count 1), willful and wanton negligence (Count 2), premises liability (Count 3), and failure to protect under a state-created danger theory (Count 4). *Id.* Defendants filed responsive pleadings on May 27, 2010, with both Defendants filing a Plea in Bar asserting the statute of limitations, and the County also asserting sovereign immunity. (Opp. 3.) The Circuit Court dismissed Counts 1, 2, and 3 against the County with prejudice on sovereign immunity grounds, and permitted Plaintiff to amend Count 4, which Plaintiff claimed was constitutionally driven, though the complaint did not cite any constitutional rights or 42 U.S.C. § 1983. *Id.*

Plaintiff then filed an amended complaint on August 2, 2010, reasserting Counts 1 and 2 against Defendant Doe, and Counts 3 and 4 (seemingly) against both Defendants. *Id.* Defendants removed the Amended Complaint to this Court on August 13, 2010. (Opp. at 4.) Defendant filed this Motion to Dismiss on August 20, 2010. [Dkts. 2, 3.] Plaintiff filed a response in opposition ("Resp.") on September 27, 2010. [Dkt. 7.] Defendants' motion is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of a plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* at 1965. In its recent decision, *Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) test. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. *Id.* (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully". *Id.* at 1949. In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Analysis

In support of their motion, Defendants raise the following six arguments. First, that Count 3 of the Amended

Complaint is barred as having already been dismissed by the County Circuit Court. Second, that Count 4 fails to plead the existence of an official policy or custom of the County as the proximate cause of the violation of his civil rights. Third, that the allegations in Count 4 do not rise to the level of a constitutional violation. Fourth, that the facts alleged in Count 4 are legally insufficient to state a cause of action under the state-created danger theory. Fifth, that any further amendment to the Amended Complaint identifying Defendant Doe is time-barred. And Sixth, that Defendant Doe owed no actionable duty to Plaintiff.

Because this Court will find for the Defendants on their First, Second, and Fifth claims for dismissal, thus warranting dismissal of this case in its entirety, this Court will not address Defendants' other arguments.[1]

A. Res Judicata (Count 3--Defendant County)

Defendants argue that, to the extent Plaintiff pleads Count 3 against the County (as opposed to Defendant Doe), that Count has already been dismissed by the County Circuit Court and

---

[1] Although this Court must grant dismissal for reasons explained in this memorandum, this Court is deeply unsatisfied with that result, as the conduct alleged here is shocking to say the least, and may well support a state-created danger theory. It seems reasonable to the Court that a person, instructed by someone who looks like a police officer to do something, will do as told. While Defendant Doe may not have known of the *specific* risk of Plaintiff being *shot* in going back outside, she allegedly knew of a violent situation taking place outside involving a "very dangerous individual," and she nonetheless allegedly told the Plaintiff to go outside. Knowing this, the Court cannot help but question whether more zealous representation might have achieved a different result in this case, or whether the situation, handled more decently and humanely, might have resulted in no case at all.

6

is therefore barred by *res judicata*. Federal courts apply the state res judicata rules enforcing the underlying judgment. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1985). In Virginia, when the second suit is between the same parties on the same cause of action as the first, "the Judgment in the former is conclusive of the latter." *Lofton Ridge, LLC v. Norfolk Southern Rwy. Co.*, 268 Va. 377, 381 (2004). With respect to Count 3, Plaintiff's state suit involved the same defendant (the County) and the same cause of action (premise liability) and resulted in dismissal with prejudice. (MTD at 4.) This Court will therefore dismiss Count 3.[2]

B. <u>Failure to State a Claim under Section 1983 (Count 3-- Defendant County)</u>

Defendants argue that, again, to the extent Plaintiff pleads Count 4 against the County (as opposed to Defendant Doe) under 42 U.S.C. § 1983, that claim is insufficient for failure to allege an official policy or custom of the County as the proximate cause of his injury. (MTD at 4.) "[A] local government may not be sued under § 1983 for an injury infliced solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible." *Monell*

---

[2] In the same vein, to the extent either Counts 1 or 2 are pled against the County (as opposed to Defendant Doe), those Counts are dismissed with respect to the County as barred by *res judicata*, because both Counts were dismissed with prejudice by the county court.

7

*v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). Plaintiff here fails to allege, directly or indirectly, any facts supporting a finding of an *official policy* or *custom* that resulted in his injury.

Instead, Plaintiff cites the case of *Leatherman v. Tarrant County Narcotics & Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), for the proposition that "such a heightened pleading standard would only contradict the outcome of the unanimous decision in *Leatherman*." (Resp. at 3.) It would do no such thing.

It is not a heightened pleading standard to require an allegation of an official custom or policy in support of a § 1983 claim, because an official custom or policy is a *required element* of a § 1983 claim. 436 U.S. at 694. Indeed *Leatherman* makes this clear, as does *Karim-Pahani v. Los Angeles Police Dept.*, 839 F.3d 621 (9th Cir. 1988), a case that both *Leatherman* and Plaintiff cite. *Leatherman* cites *Karim-Pahani* as illustrative of the *non*-heightened pleading standard of the Ninth Circuit, contrasting it with the Fifth Circuit's heightened pleading standard, which the Supreme Court rejected. 507 U.S. at 165 ("[A] claim of Municipal liability under section 1983 is sufficient to withstand a motion to dismiss *even if the claim is based on nothing more than a bare allegation that the individual officers conformed to official policy, custom, or*

8

*practice*.") (quoting *Karim-Pahani*, 839 F.3d at 624) (emphasis added). The Court conformed to this standard. *Id.* at 168. Indeed, *Karim-Pahani*, which Plaintiff cites repeatedly, also stated "Section 1983 also imposes liability upon municipalities for constitutional deprivations resulting from actions taken *pursuant to government policy or custom*." *Id.* at 624 (emphasis added).

These statements, along with the Supreme Court's decisions in *Iqbal* and *Twombly* (decided long after *Leatherman* but not mentioned by Plaintiff), leave no question that factual allegations regarding actions taken pursuant to an official custom or practice are necessary to support a § 1983 claim. And in this case, remarkably, Plaintiff's only allegation as to custom or policy came out during argument before the Court, when Plaintiff's counsel stated, "It has to be the policy that when you walk into a police station, you get help." (Tr. at 55:18-20.) Perhaps so, but only actions take *pursuant to* (as opposed to *in violation of*) an official custom or policy, invoke § 1983.

This Court must therefore dismiss Count 4 as to the County.

### C. Statute of Limitations (Defendant Doe)

Defendant Doe next argues that Plaintiff's claims are time-barred with respect to her because her identity was not revealed within the two-year statute of limitations applying to

9

Plaintiff's claims. (MTD at 10.)  The applicable statute of limitations in this case is two years.  Va. Code Ann. § 8.01-243(A).  This includes Count 4, the § 1983 action, as such claims typically adopt the state time-bar for similar torts.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).

Plaintiff filed his complaint on April 27, 2010.  (MTD at 10.)  And although typically the statute of limitations for his claims would have expired on February 2, 2010, Plaintiff alleged incapacity from his injuries through "late May 2008," meaning that the statute of limitations in this case could potentially be tolled to expire in late May, 2010.  Va. Code Ann. § 8.01(A)(2)(b).  Because that date has passed, and because Plaintiff has yet to reveal the identity of Defendant Doe, Defendant argues that no time remains for that revelation to occur.

Federal Rule of Civil Procedure 15(c)(1)(C) permits amended pleadings to relate back to the date of the original pleading if:

> (1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in by the amendment received notice of the action such that it will not be prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named a defendant but for a mistake concerning the identity of the proper party.

10

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007) (internal quotation marks omitted). While there is no doubt as to the first element in this case, the same is not true for the second and third. *Goodman* explains that "substitutions for 'Doe' Defendants after limitations have run [are] barred by the two separately stated requirements of Rule 15(c)(3) that focus on the new party." *Id.* at 471.

With regard to the first requirement, the change must not prejudice the party being substituted, and under the second, the new party must have known or should have known within the limitations period that but for a mistake (*e.g.*, naming the wrong party), it would have been added as a party. *Id.* at 471. "At bottom . . . [will] the rights of the new party, grounded in the statute of limitations . . . be harmed if that party is brought into the litigation?" *Id.*

Considering Defendant Doe in this case, there is no evidence of a mistake by Plaintiff in identifying her, let alone a mistake that Doe knew about. And she would obviously be prejudiced by being added to this lawsuit. Plaintiff offers no argument to the contrary besides the nonsensical claim that the statute of limitations somehow imposes an improper "heightened pleading standard" upon him. (Resp. at 3.) This Court must therefore grant the motion to dismiss with respect to Defendant Doe.

## IV.    Conclusion

This Court will therefore grant Defendants' motion and dismiss the claim in its entirety.

|  |  |
|---|---|
| | /s/ |
| October 7, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |